**UNITED STATES of America, Appellee,**

v.

**Paul CAMPO, Appellant.**

**No. 846, Docket 83–1370.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 27, 1984.

Decided Oct. 1, 1984.

Arthur J. Viviani, Maloney, Viviani, Higgins & Kelly, New York City, for appellant.

Robert L. Plotz, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Kenneth A. Caruso, Barry A. Bohrer, Asst. U.S. Attys., New York City, of counsel), for appellee.

Before OAKES, VAN GRAAFEILAND and WINTER, Circuit Judges.

PER CURIAM:

Paul Campo appeals from a judgment of conviction entered on September 19, 1983, in the United States District Court for the Southern District of New York, before Charles S. Haight, Judge, and a jury. Count One of the indictment charged that Campo, a New York City police officer, conspired with other New York City police officers to commit extortion by obtaining money "under color of official right" from an after-hours discotheque called the Funhouse, in violation of the Hobbs Act, 18 U.S.C. § 1951 (1982). Count Two charged that Campo committed extortion, and attempted to commit extortion, under color of official right, in violation of 18 U.S.C. §§ 1951, 1952. Campo was sentenced on Count One to a two-month term of imprisonment, to be served on twenty consecutive weekends. Imposition of sentence on

Count Two was suspended, and Campo was placed on probation for two years with a special condition that he perform 150 hours of "community service work." Campo has been released on bail pending the disposition of this appeal. We reverse and remand in light of *United States v. O'Grady*, 742 F.2d 682 (2d Cir.1984) (en banc).

The Government's evidence was that Paul Campo, a police officer assigned to Manhattan's Tenth Precinct, and a number of his colleagues used their positions as police officers to obtain payoffs from the Funhouse, a Manhattan discotheque engaged in interstate commerce, Campo receiving approximately $250 in payoffs during 1980 and 1981. The Funhouse was open on Friday and Saturday nights and drew crowds big enough to require bouncers and to create traffic problems. Police officers in the Funhouse precinct would receive $50 from the head bouncer to be seen in the vicinity of the club, to overlook parking violations, and to help out with security. A fellow officer testified that he and Campo shared these payoffs about ten times between 1979 and 1980. Campo admitted to an FBI agent and an Assistant United States Attorney that he had received payoffs and knew "it was wrong."

Campo requested that the trial court charge the jury that it must find that "the defendant solicited or in some fashion asked for the payments in order to use the power of his public office to procure the payments not owed to the public official or his office.... The mere voluntary payment of money would not constitute extortion."[1] The court declined the request and charged the jury as set out in the margin.[2] The court's instructions are in line with the panel opinion in *O'Grady*, which was overturned en banc. In the panel opinion the majority had written that an official's "willing acceptance of benefits that are 'in-

---

1. The complete request was as follows:

It is unnecessary for the government to prove that the defendant, by acts or words, threatened, forced or coerced the payments. You must however, find that the defendant solicited or in some fashion asked for the payments in order to use the power of his public office to procure the payments of money not owed to the public official or his office.

On the other hand, you may also find the defendant guilty if you find beyond a reasonable doubt that the payor, the Funhouse, initiated the payments and the payor's motivation arose from a pressure, however slight, exerted by the defendant by means of the power of his public office.

The mere voluntary payment of money would not constitute extortion.

2. Extortion, as used here, is a legal term and it does not necessarily have the same meaning in the law as it has in everyday speech. Extortion, as used here, means obtaining money or property from another with his consent under color of official right. The term "under color of official right" means through the wrongful use of a public law, where the money is not lawfully due and owing to the public official or to the office which he holds. Thus, extortion under color of official right means that a public official, such as a police officer, obtains money not lawfully due and owing to him or his office because of his official position.

The gist of the offense charged is payment to an official because of the public office he holds when that official is not entitled to receive such a payment. The government need not show that the payment was obtained by force, threats or the use of fear so long as the person making the payment, and this includes a corporation, consents to the payment because of the office of the public official. *It is not necessary that the public official induced or initiated the illegal payments or that the person making the payment made it voluntarily, so long as the payment is made to the public official by reason of his public office and without legal obligation for such payment.*

So long as the money is paid because of the office held by the official, *he need not have made any promises with respect to official action in return for receiving the payment.* Extortion under color of official right focuses upon whether the motivation for the payment arises from the perception on the part of the person making the payment of the powers of office of the public official to whom the payment is made.

Even though the public official may not possess the power or even have the actual authority by law to achieve any goal for which he was paid, if you conclude beyond a reasonable doubt that the person making the payment reasonably believed that the official had the ability to effectuate a promise and that this belief was exploited by the defendant in order to obtain the payment, then you may find the defendant guilty of extortion under this statute.

(Emphasis added.)

duced' by the sheer power of his public office is sufficient to violate the Act," *United States v. O'Grady*, No. 82–1344, slip op. 5753, 5766 (2d Cir. Aug. 10, 1983), and that "the public official ... is ... held responsible ... for his own conduct in accepting substantial benefits ... which he must realize are offered to him only because of his office," *id.* at 5767.

But in reversing the *O'Grady* panel decision, the en banc court, 742 F.2d 682 (2d Cir.1984), held that it was improper to equate the acceptance of benefits by a public official with wrongful *use* of public office even if the public official knew what motivated the bestowal. *Id.* at 687. We concluded that "wrongful use of office involves some action by the public official to induce the benefits given." *Id.* at 690. In light of these holdings, the charge as given was erroneous and the case must be remanded for a new trial. So stating, we find that Campo's requested instruction, *supra* note 1, does not improperly equate the acceptance of benefits with wrongful use of office.

At the same time, we note both the en banc holding that inducement may take "subtle" forms, *O'Grady*, at 691, and the holding of eight judges that inducement may be inferred from "a finding of repeated acceptances over a period of time of substantial benefits." *Id.* at 694 (Pierce, J., concurring); *accord id.* at 694 (Newman, J., concurring).

We have examined Campo's other contentions and found them without merit.

Reversed and remanded.