**UNITED STATES of America,**

v.

**Paul CAMPO, Defendant.**

**No. 83 Cr. 243–CSH.**

United States District Court, S.D. New York.

March 12, 1985.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for U.S.; Martin J. Auerbach, Asst. U.S. Atty., of counsel.

Arthur J. Viviani, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Defendant was convicted of violating the Hobbs Act, 18 U.S.C. § 1951, following a jury trial which commenced on January 14, 1985. A previous conviction was reversed on appeal, and the case was remanded for a new trial. *United States v. Campo*, 744 F.2d 944 (2d Cir.1984). Following the retrial and conviction, defendant now moves for a judgment of acquittal pursuant to Rule 29(c), Fed.R.Crim.P.

The statute under which defendant was convicted proscribes "extortion," defined in part as "the obtaining of property from another ... under color of official right." 18 U.S.C. § 1951(b)(2). Defendant, a police officer, accepted money while on duty. In *United States v. O'Grady*, 742 F.2d 682 (2d Cir.1984), the *en banc* Court of Appeals rejected the view that "the mere acceptance of benefits by a public official is extortion ... [even though] the official knew that his office was the motivation behind the giving of the benefits." 742 F.2d at 687. Defendant asserts that the evidence at trial demonstrated at most nothing more than this mere acceptance and moves for acquittal.

As noted, the *O'Grady* court held that the government must show more than mere acceptance of benefits by a public official to demonstrate a Hobbs Act violation. Instead, it must be shown that the official used his office in such a way as to induce the payments. 742 F.2d at 688; *see also United States v. Margiotta*, 688 F.2d 108, 133 (2d Cir.1982), *cert. denied*, 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983). The offense "begins with the public official, not with the gratuitous actions of another." *O'Grady, supra*, 742 F.2d at 691.

The majority opinion in *O'Grady* cited two methods for demonstrating inducement: "[p]roof of a request, demand, or solicitation, no matter how subtle" and "proof of a *quid pro quo*." 742 F.2d at 691. In an opinion which held the support of a majority of the *en banc* panel's judges, although it was not the opinion of the majority, Judge Pierce suggested a third method for demonstrating inducement: the inference of inducement may be drawn from "a finding of repeated acceptances over a period of time of substantial benefits.... [T]he repeated acceptances of such benefits could, although it need not necessarily, constitute a communicative act amounting to inducement by implication." 742 F.2d at 694 (Pierce, J., concurring). The *Campo* panel cited this test approvingly. *Campo, supra*, 744 F.2d at 946. The government contends that the jury could properly have convicted under any of these tests.

From the evidence viewed most favorably to the government, *United States v. Cunningham*, 723 F.2d 217, 230 (2d Cir. 1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984), the jury could have found the following. The chief bouncer at a nightclub located in Campo's precinct sought special police attention for his club on weekend nights. His willingness to pay for this attention was known to some of the officers in the precinct. Campo and his partner did not ordinarily patrol the sector of the precinct in which the club was located, but they were occasionally assigned there. On one of these occasions they were flagged down by the bouncer as they passed the club on routine patrol. The bouncer explained his need for special attention, and Campo's partner told the bouncer that they would do what they could. He warned, however, that they had other duties to perform.

The sector was a quiet one at night, and the area of the club naturally received more attention than most because it was one of the few persistent trouble spots. Campo's partner, police officer Commisso (a witness called by the prosecution, not the defendant), testified that they did not alter their normal patrol practice in response to the bouncer's request, but they evidently satisfied him, for near the end of their shift he flagged them down again and, when the patrol car window was rolled down, dropped fifty dollars into the front

seat. After discussion, the officers kept the money.

On subsequent occasions on which they patrolled the club's sector on weekend nights, Commisso testified that they again did not alter their normal patrol practice. However, they did make a point of driving by the club near its closing time in expectation of receiving a payment. In order to collect the payments, the officers stopped in front of the club and waited for the bouncer to deliver the money. After several such payments the officers voluntarily decided to stop accepting the payoffs, but they returned none of them.

■ The test under Rule 29(c) is whether on the evidence presented "a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *United States v. Lieberman,* 637 F.2d 95, 104 (2d Cir.1980). The issue on this motion is whether the jury could fairly have concluded beyond a reasonable doubt that by his actions Campo induced or caused the payments which he and his partner accepted from the bouncer. As noted, the government contends that inducement could be found on any of the three grounds approved by the Court of Appeals.

It is arguable that the jury could fairly have found a *quid pro quo.* Although Campo's partner denied that the officers altered their normal patrol practices to accommodate the bouncer, there was at least one time when he denied them payment because he thought that they had not given him adequate service. Plainly he thought he was being given a *quid pro quo.* And the contrasting evidence of payment tendered on most occasions but withheld on a particular occasion would support an inference that, contrary to Commisso's defensive protestations, the officers gave special attention to the club.

■ It is not necessary, however, to resolve the issue whether the jury could have found on this evidence an actual or offered *quid pro quo.* That is because the jury could fairly have inferred that the payments were induced by the behavior actual-

ly admitted by Campo's partner. There is always the risk of an appearance of coercion when police officers accept payments from private citizens for actions ostensibly within their official duties. The risk is that it may begin to appear, as the bouncer apparently believed, that the police protection is provided in return for the payments. Conversely, of course, the benefits may begin to seem a necessary prerequisite to the continuation of the police service. It is this effect to which Judge Pierce referred when he noted in *O'Grady* that "the jury could find that such continued acceptances of unwarranted benefits served to communicate a message inducing such benefits...." 742 F.2d at 694 (Pierce, J., concurring). Even if it is clear that the payments were initially given freely, they may come to be viewed as necessary to secure the services provided.

■ The evidence at trial would fairly support the inference that an effect of this sort was operating here. It was clear that the bouncer thought he was paying for the officers' services. When they performed satisfactorily, he paid. When they did not, he did not. Although there is no direct evidence that the officers, by their words or actions, created this perception in the bouncer's mind *ab initio,* the jury could fairly have found that they reinforced that perception and, ultimately, became its source. First, the officers collected their money in a proprietary manner. Apparently without prearrangement they began to stop by with the sole purpose of collecting the money. The implication was that they expected it. Second, once the bouncer clearly communicated to the officers his belief that the payments were not gratuitous but were given for services, the officers not only did not disabuse him of this notion but continued to collect the payments.

■ Even if the jury did not infer from this that, contrary to Commisso's testimony, the officers were in fact providing a *quid pro quo,* they could readily have concluded that the bouncer continued to make payments because this behavior caused him

to believe that the officers expected him to pay if they were to maintain the prevailing level of police assistance. If the officers caused him to believe that a *quid pro quo* was being offered or delivered, and payments were made because of this belief, a Hobbs Act violation occurred. The jury could fairly have concluded that, for the reasons stated, these officers through their behavior engendered such a belief.

■ Defendant argues that these payments were too small to have constituted the "substantial benefits" to which Judge Pierce referred. Although, as defendant points out, the benefits were small compared to those in *O'Grady*, the jury could readily have found them to satisfy Judge Pierce's definition of "substantial"—that is, "benefits of a nature and magnitude which reasonably could affect a public official's exercise of his or her duties." 742 F.2d at 694. One of Campo's fellow officers testified that for the same amount of money he was willing to abandon his normal patrol in favor of babysitting the club. Even Commisso testified that he and Campo were pleasantly surprised at the size of the payments. There was abundant evidence from which the jury could find substantiality.

■ Defendant also notes that some "wrongful use" of office must be shown to have induced the benefits under *O'Grady*. He argues that this requires some type of *quid pro quo*, such as altering normal patrol patterns, or a request or demand for payments. As noted, Campo's partner denied both. However, it must be recognized, as Judge Pierce implicitly indicated, that the acceptance of money in return for the performance of official duties can itself be a wrongful use of office if the circumstances surrounding the acceptance create the impression that such payments are expected. The repeated acceptance becomes, in effect, a demand for more.

■ At trial the example of the postman accepting Christmas tips was debated. Plainly a postman who finds a tip-containing card in the mailbox and quietly leaves commits no Hobbs Act violation. However,

if, having been given a Christmas tip accompanied by a card on which is written "Please try and keep the mail dry," he develops a habit of occasionally standing on the doorstep after delivering the mail with an expectant look on his face until given further tips, he may well violate the Act. This is true even if he would have kept the mail dry without being paid and even if on a few occasions an irate home owner sends him away empty-handed because recently the mail had been soggy. The focus must be on the totality of the circumstances and the impression which the postman's behavior creates in those circumstances. If he causes mail recipients to believe he expects further tips in return for continued good service, even though he believes in good faith that the tips are wholly voluntary, he has induced the tips and violated the Act. The public official bears the risk that his repeated acceptance of what he believes to be gratuities may become coercive.

On the evidence presented the jury could fairly have concluded beyond a reasonable doubt that the circumstances under which the officers collected the payments and their manner of repeatedly collecting them induced the bouncer to continue to make them. There is no ground for entering a judgment of acquittal. The motion is denied.

It is SO ORDERED.